In re STEELE.

(Supreme Court, Appellate Division, Fourth Department. January 8, 1913.)

1. PLEADING (§ 406*)—WAIVER OF DEFECTS—AGREEMENT FOR TRIAL ON MERITS.

    An agreement by parties to try the proceeding upon the merits waives any defect in the petition.

    [Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1355–1359, 1361–1365, 1367–1374, 1386; Dec. Dig. § 406.*]

2. LANDLORD AND TENANT (§ 139*)—TENANCY FROM YEAR TO YEAR—NATURE AND INCIDENTS.

    One renting farm land under an oral lease at a yearly rental, without provision as to how long he should have the premises, became a tenant from year to year, and had no implied right to remove crops which matured after the termination of his tenancy.

    [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 492–507; Dec. Dig. § 139.*]

3. LANDLORD AND TENANT (§ 53*)—TENANCY FROM YEAR TO YEAR—TERMINATION—ESTOPPEL BY LANDLORD.

    The grantee of the lessor of farm land leased from year to year, who about two or three months after the purchase sent men to work the farm and then first became aware of the tenant's claim to hold the farm for another year, on which he did not reside, and then demanded that he cease attempting to cultivate it, and remove his tools from the land, was not estopped from proceeding to remove the tenant.

    [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 129–131, 134, 135; Dec. Dig. § 53.*]

4. LANDLORD AND TENANT (§ 116*)—TENANCY FROM YEAR TO YEAR—TERMINATION—NOTICE.

    A tenancy from year to year may be terminated at the end of any year by either the landlord or the tenant without previous notice of intention to do so.

    [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 382–388, 395–400; Dec. Dig. § 116.*]

5. LANDLORD AND TENANT (§ 90*)—TENANCY FROM YEAR TO YEAR—RIGHTS OF LANDLORD.

    Where a tenant from year to year holds over, the landlord may either treat him as a wrongdoer, and eject him without notice, or waive the right of possession, and recover the rent for another year, on the ground that by holding over he has become a tenant for another year.

    [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 284–289; Dec. Dig. § 90.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. LANDLORD AND TENANT (§ 308*)—ACTION FOR POSSESSION—SUFFICIENCY OF EVIDENCE—IMPROVEMENTS BY TENANT.

In a proceeding for the removal of a tenant holding from year to year, evidence *held* insufficient to show that the tenant had put a new roof on the barn under a verbal agreement that he should remain as tenant until the rental reimbursed him for the amount so expended.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1314–1316; Dec. Dig. § 308.*]

Appeal from Erie County Court.

Petition by Katharyn A. Steele against Jacob Weber to recover possession of certain premises. From an order awarding petitioner possession, with costs of the proceedings, Weber appeals. Affirmed.

The proceeding was commenced on the 5th day of July, 1912, by the filing of a petition asking for the removal of Jacob Weber from certain premises consisting of 64½ acres of land and a barn, located about three miles from the village of Hamburg, in the town of Hamburg, Erie county. The court, after hearing evidence of both parties, granted the order awarding the possession of the premises to the petitioner, Katharyn A. Steele, upon the ground that Jacob Weber was holding the same over after the expiration of his term of tenancy thereof without the consent of the landlord, which tenancy, the court found, was one from year to year.

Argued before McLENNAN, P. J., and KRUSE, ROBSON, FOOTE, and LAMBERT, JJ.

William F. Wierling, of Buffalo, for appellant.
Henry W. Willis, of Buffalo, for respondent.

McLENNAN, P. J. In March, 1897, Mary Gifford, then the owner of the farm in question, leased it to Jacob Weber at a rental of $45 a year, and at that time there was nothing said about how long Weber should remain or how long he could have it. The leasing was oral, and Weber continued thereafter for 15 years to occupy the farm, the rent being increased from $45 to $60 and then to $75 per year, and later to paying the taxes and the interest on a $1,200 mortgage. On January 15, 1912, Mary Gifford made, executed, and delivered to Katharyn A. Steele a deed of the premises in question, and the deed was recorded on January 23, 1912. On January 27, 1912, Mrs. Gifford's husband wrote to Jacob Weber as follows:

"Dear Sir: We have transferred or sold our farm. So you will have to deal with new owners. We have got nothing more to say in regard to farm. Its all over. Yours truly."

There were no buildings on the premises other than a barn, and during all the period of his tenancy Weber's occupancy consisted only in working the farm in season and storing crops and tools in the barn. He lived some two miles from the farm. Mrs. Steele sent men to work the farm commencing April 10, 1912, and thereafter at various times some crops were put in by men in her employ and some hay was cut by them. Weber, however, also put in some crops in the spring, and drew away the hay which had been cut, and as a result of the conflicting attempts of both parties to cultivate the farm this proceeding was brought.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The petitioner alleged as grounds for the removal of Weber from the premises, first, that he had intruded into and squatted upon the premises without permission; second, that he was holding over without permission after the termination of the tenancy of one year; and, third, that he had forcibly entered upon the premises and detained possession thereof from the petitioner.

[1] However objectionable in form this petition may have been, the parties agreed to proceed to try the proceeding upon the merits, thereby waiving any defect in the petition. A claim was made by Weber that, under the terms of his agreement with Mrs. Gifford, he would in any event be entitled to a crop of winter wheat which was sowed by him in the fall of 1911, and which would not mature, and be ready for harvest until after March, 1912. There is no evidence in the record to show that Katharyn A. Steele had any notice of Weber's alleged rights concerning this crop of wheat, and Mrs. Gifford and her husband deny that permission was given to Weber to sow it with the understanding that he would be allowed to harvest it. In fact, they state that they told him, if he sowed this wheat at all, he did so at his own risk. Weber says that he saw Mr. Gifford some time in August before he sowed the wheat, and said to Mr. Gifford, "You folks telling about selling the farm, how about if I put in wheat and stuff?" to which Mr. Gifford replied: "Never mind, you sow the wheat. Improve the place. Make it look better, and you get your pay. You keep it." It will thus be seen that, according to Weber's own version of the transaction, he sowed the wheat upon the assurance of Mr. Gifford that he would get his pay, and not upon any express agreement that he should have the right to remove it when it was ripe.

[2, 3] Weber having rented the premises in the manner above shown, without any agreement in writing, became a tenant from year to year, and there was no implied right under the law to remove crops which matured after the termination of his tenancy; nor was any express agreement to that effect claimed, nor were facts shown sufficient to raise an estoppel in Weber's favor. Reeder et al. v. Sayre, 70 N. Y. 180, 26 Am. Rep. 567.

[4] A tenancy from year to year may be terminated at the end of any year by either the landlord or the tenant without previous notice of intention so to do. Adams v. City of Cohoes, 127 N. Y. 175, 28 N. E. 25. The giving of the notice contained in the letter of January 27th was therefore immaterial, except that it served to give Weber knowledge of the fact that a change in ownership had taken place, and that from thenceforth he must deal with the new owner.

[5] Where a tenant from year to year holds over, even for a few days, after the expiration of any particular year, a landlord has the option of treating the tenant as a wrongdoer, and bringing proceedings to eject him, and is not required before so doing to serve a tenant with any notice to quit, or the landlord may waive the right to possession and recover the rent for another year, for the reason that the tenant by remaining over has impliedly become a tenant for another year. Adams v. City of Cohoes, supra.

No claim is made in this case that Mrs. Steele elected to treat Weber as a tenant for another year, nor that she did anything to recognize him as a tenant after the expiration of his term, nor that she did any acts which would in any way estop her from asserting her right to immediate possession. It will be remembered that Weber did not live upon the farm and the evidence does not disclose any facts tending to show that Mrs. Steele became aware of Weber's claim to the right to hold the farm for another year until the 10th day of April, 1912, or shortly thereafter, when both parties commenced to put in crops, and from that time on Mrs. Steele demanded of Weber that he desist in his attempts to cultivate the farm and that he should remove from the farm everything that belonged to him, and served a formal notice upon him to that effect about the 29th of May, 1912.

[6] It is claimed by Weber that in the summer of 1909 he put a new roof on the barn at a cost of about $125, and that it was verbally agreed between him and the Giffords that he should remain as a tenant on the farm until such time as he had received from the rental reimbursement for the amount paid for the roof. This was denied by the Giffords, and the court apparently found against Weber upon that proposition, and his finding was clearly sustained by evidence, for it appears that in the two years that Weber remained there thereafter he deducted nothing to apply upon the amount claimed to be due him for the roof, but, on the other hand, paid the stipulated rental. The court apparently was convinced that as to this amount he accepted the promise of the Giffords to pay him at some time, as concededly was the case in reference to another $25 which he loaned to the Giffords. If Weber has been harshly and unjustly treated by the Giffords, it is owing to carelessness upon his part in failing to obtain a lease in writing with sufficient provisions to protect him in case of a sale of the premises, and also as to the right to renew the lease at the expiration of any yearly term.

It follows that the order appealed from should be affirmed, with costs. All concur.